

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-1998

# United States v. Isaac

Precedential or Non-Precedential:

Docket 97-7139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Isaac" (1998). *1998 Decisions.* Paper 77.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/77

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 10, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-7139

UNITED STATES OF AMERICA; GOVERNMENT OF THE
VIRGIN ISLANDS

v.

RUPERT ISAAC,
      Appellant

On Appeal From the United States District Court
For the District of the Virgin Islands
(D.C. Crim. Action No. 95-cr-00038)

Argued December 11, 1997

BEFORE: SLOVITER, STAPLETON and MANSMANN,
Circuit Judges

(Opinion Filed April 10, 1998)

       Azekah E. Jennings
       James R. Fitzner (Argued)
       Office of the United States Attorney
       1108 King Street, Suite 201
       Christiansted, St. Croix
       USVI 00820
        Attorney for Appellees

Albert J. Meade (Argued)
50 Queen Street
Frederiksted, St. Croix
USVI 00840
     Attorney for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Rupert Isaac appeals from a final judgment of sentence.
We will reverse and remand for reconsideration of Isaac's
motion to enforce the plea agreement he reached with the
government.

I

Defendant Rupert Isaac was pulled over by the Virgin
Islands police for a routine traffic violation. During the
stop, the officers observed an empty holster in the side
pocket of the vehicle door. After conducting a search of the
vehicle, they found a box of live rounds of .357-caliber
ammunition and a quantity of marijuana divided into a
number of plastic "dime" bags. After arresting Isaac, the
officers conducted an inventory search of his vehicle and
located a loaded .357-caliber revolver underneath the
driver's seat floor mat.

Isaac was named in a two-count indictment charging him
with (1) carrying a firearm during and in relation to a drug
trafficking crime, contrary to 18 U.S.C. S 924(c)(1); and (2)
possession of a controlled substance with intent to
distribute, in violation of 21 U.S.C. S 841(a)(1). Shortly
thereafter, Isaac pled guilty to both counts, pursuant to an
agreement with the government, which included the
following provisions:

        1. The defendant agrees to cooperate fully and
        truthfully with the government . . . .

        . . .

        4. If the Government in its sole discretion determines
        that the defendant has fulfilled his obligations of

2

cooperation as set forth above, at the time of sentencing or within one (1) year thereof the government will . . .

. . .

b. Make a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guideline S 5K1.1, if the government, in its sole discretion, determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.

App. at 24, 27.

The government held a series of meetings with the defendant pursuant to the agreement. Ultimately, however, the government determined that it would not request a downward departure under U.S.S.G. S 5K1.1.

When no motion was filed, Isaac moved for an order directing the government to file a S 5K1.1 motion or, alternatively, for an order allowing him to withdraw his guilty pleas. The motion asserted that the pleas were entered in reliance on the government's commitment to file a S 5K1.1 motion and that the government had failed to honor that commitment in "bad faith." App. at 89. Isaac's primary argument was that the plea agreement should be specifically enforced, but he pointed out that under Santobello v. New York, 404 U.S. 257 (1971), the court could, in the alternative, grant him permission to withdraw his pleas.

The government's response to this motion "readily concede[d] that defendant Isaac did meet with law enforcement officials on a few occasions in an attempt to fulfill his end of the bargain. However, [the response continued,] nothing he provided during these discussions could [be] verified or corroborated independently to date. Hence, his counsel was advised that the government [had] determined, in its sole discretion, that the defendant [had] not provided `substantial assistance.' " App. at 83.

At the oral argument on Isaac's motion, his counsel candidly acknowledged that he had no reason to believe the

3

government's refusal to file a motion was based on race or other constitutionally suspect grounds. Rather, he relied on the plea agreement and a written supplemental agreement in which the government had specified the kind of information it sought from Isaac. Counsel represented to the court that Isaac had supplied the information that he had of the character sought, that the government had indicated it had some reason to believe the information might be truthful, but that it had declined to file a S 5K1.1 motion solely because it could not independently corroborate that information. As counsel put his argument, "[t]he government just hasn't used its vast resources to verify what the defendant has said but that is not[a] sufficient" reason to justify not filing the motion. App. at 56.

In response, the government's primary position was that it had no duty to explain its decision not to file the motion because the court had no jurisdiction to review the exercise of "its sole discretion" under the agreement. The government did, however, confirm that Isaac had provided some information about criminal activity of others of the character specified in the supplemental agreement. It added, by way of explanation, that it had been unable to independently verify the information provided and further indicated that it believed Isaac had been selective in his disclosures.

The district court denied the motion, determining that because the agreement gave the government "sole discretion" to decide whether a substantial assistance motion was warranted, the court had no power to review the government's refusal to file the motion.

Isaac moved for reconsideration. In the motion and the course of the ensuing evidentiary hearing, Isaac advanced new grounds, independent of the plea agreement, in support of his application for permission to withdraw his pleas. He asserted that there was "no factual basis" for his pleas. App. at 107. With respect to the weapons count, he insisted that it was clear, based on the government's own evidence, that he had not used or carried the gun in relation to a drug offense. With respect to the possession

4

count, he alleged that the government's evidence did not demonstrate that the substance possessed was marijuana.

After an evidentiary hearing at which the district court heard the government's evidence, the motion for reconsideration was denied. In its opinion, the court concluded that the government's evidence demonstrated that Isaac had carried a gun in relation to the drug offense of possession with intent to distribute. It pointed specifically to the large amount of marijuana found in the car, the presence of packaging and paraphernalia used in distributing marijuana, the fact that the gun was loaded and the fact that it was in a place readily accessible to Isaac as he drove. With respect to the second count, the court concluded that the substance discovered in Isaac's vehicle was marijuana, pointing to the testimony of Lt. Harvey. Harvey testified that he had field tested for marijuana and received positive results and that he had received a report from the DEA lab stating that the substance had tested positive for marijuana.

The court then sentenced Isaac to the statutory mandatory minimum five years on Count I, a consecutive 24 months for Count II, three years supervised release, a $1,000 fine, and a $100 special assessment. This appeal followed.

II

Isaac contends the district court erred in determining that it had no power to review the government's refusal to file a substantial assistance motion pursuant to the plea agreement. The district court characterized Isaac's motion as a request for the court to "review independently the quality of his assistance to determine whether it was indeed `substantial.' " App. at 95. The district court declined this invitation, choosing to rely upon the agreement's language that the government had "sole discretion" whether to make the S 5K1.1 motion. The question on appeal is whether this approach was erroneous. Our review of this question of law is plenary. See United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989).

5

The sentencing guidelines provide that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. S 5K1.1. The language of S 5K1.1 requires that the government make a motion before a district court can depart from the sentencing guidelines range in recognition of a defendant's substantial assistance. Since S 5K1.1 expressly leaves discretion to the government, it is clear that, in the absence of a plea agreement, a district court has an extremely limited role in reviewing the government's refusal to move for a departure.

In Wade v. United States, 504 U.S. 181 (1992), the Supreme Court outlined a narrow space for a defendant to challenge the government's refusal to file a S 5K1.1 motion in the absence of a plea agreement. Wade voluntarily provided the government with information used to secure a conviction of another person, and then sought to require the government to file a S 5K1.1 motion. The Court determined that the prosecutor's discretion to file the motion was almost unfettered: the government's refusal could only be challenged if it "was based on an unconstitutional motive," like race or religion. 504 U.S. at 185-86. "It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing." Id. at 186. Thus, where the defendant has not entered a plea agreement, it is clear that the prosecutor has almost unreviewable discretion over whether to file a substantial assistance motion.

However, it is equally clear that when a defendant has entered into a plea agreement expressly requiring the government to make a S 5K1.1 motion, a district court has broad powers to enforce the terms of the plea contract. In Santobello v. United States, 404 U.S. 257 (1971), the Supreme Court held that a plea agreement reached with the government is enforceable against the government. Santobello was initially charged with two gambling violations. He agreed to enter a guilty plea to one offense in return for the prosecutor's promise not to recommend a

6

specific sentence before the judge. However, at sentencing the prosecutor nonetheless recommended the maximum prison term allowed for the offense. In these circumstances, the Court had little difficulty vacating the sentence since Santobello had expressly " `bargained' . . . for a particular plea . . . on [the] condition that no sentence recommendation would be made by the prosecutor." 404 U.S. at 262. Thus, the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id.

This court has reasoned from Santobello to the general proposition that "[a]lthough a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law principles." United States v. Moscahlaidis, 868 F.2d 1357, 1361 (3d Cir. 1989). Thus, "once the government makes an agreement with a defendant to file a [S 5K1.1] motion, it is bound by the terms of the agreement. It is a simple matter of contract law." United States v. Carrara, 49 F.3d 105, 107 (3d Cir. 1995).1 The scope of review given a prosecutor's refusal to make a substantial assistance motion under S 5K1.1 is thus dependant upon the existence of a contractual relationship between the defendant and the government. In the absence of a plea agreement, review is allowed only for an unconstitutional motivation. If the plea agreement contemplates a motion, however, the district court is free to apply contract principles to determine whether the agreement has been satisfied.

In this case, Isaac reached a plea agreement with the government that does not expressly promise that the government will file a S 5K1.1 motion; rather, the government has retained "sole discretion" whether to make

_____

1. The Court in Wade did not reach the question of the effect of a plea agreement on the prosecutor's discretion to file a substantial assistance motion. Indeed, the Court refused to upset prior precedent in this area, specifically noting that an "agreement on the Government's behalf to file a substantial-assistance motion" was not at issue. 504 U.S. at 185 (citing Santobello, 404 U.S. at 262-63).

the motion. The question this case presents is whether the district court can review a prosecutor's refusal to make the motion under such restrictive terms. The district court decided that though "Wade did not involve a plea agreement, its holding nonetheless applies" to these facts. App. at 97. The district court distinguished the contract analysis typically used to construe a plea agreement by reference to the discretion afforded the government in the agreement. Since Isaac agreed to leave the government with "sole discretion" whether or not to make theS 5K1.1 motion, the district court found this case closer to Wade than to Santobello. See App. at 97-100; see also United States v. Forney, 9 F.3d 1492, 1501-02 (11th Cir. 1993) (holding Wade controls on similar facts).

We conclude that this was error. A close reading of Wade indicates that its teachings are confined to situations in which there is no plea agreement. Given the general rule that plea agreements are contractual in nature, district courts must be able to review the parties' performance under the terms of such an agreement. Our recent decision in United States v. Roman, 121 F.3d 136, 142-143 (3d Cir. 1997), illustrates this principle. At issue in Roman was whether the defendant had provided information sufficiently "complete" to trigger the government's promise to file a S 5K1.1 motion. The district court had reviewed the terms of the plea agreement and evaluated the cooperation the defendant provided, concluding that the government correctly refused to make the substantial assistance motion under the circumstances. We treated the issue of compliance with the plea agreement as a straight forward matter of contract law and affirmed the district court. See 121 F.3d at 142-43.

Two other circuits considering whether to enforce a plea agreement that reserves to the government "sole discretion" have similarly applied contract principles. While recognizing the wide discretion afforded the prosecutor by the language of the plea agreement, these cases have nevertheless required district courts to make certain the prosecutor exercises "good faith" in carrying out her obligations under the contract. In United States v. Rexach, 896 F.2d 710 (2d Cir. 1990), like the case before us, the Second Circuit

8

reviewed "a cooperation agreement [that] provide[d] for a motion for downward departure on condition the defendant provide substantial assistance to be determined in the discretion of the prosecutor." Id. at 714. The court applied the contract principle that "where the agreement is conditioned on satisfaction of the obligor, the condition is not met `if the obligor is honestly, even though unreasonably, dissatisfied.' " Id. at 713 (quoting Restatement (Second) of Contracts S 228, Comment a). The court reasoned from this principle that a prosecutor's discretion under such a plea agreement, though broad, is "not completely unlimited." Id. at 714. The court concluded that a district court's review of the government's refusal to file the S 5K1.1 motion under such an agreement "is limited to deciding whether the prosecutor has made its determination in good faith." Id. Thus, the government's reservation of discretion in the plea agreement merely limits and does not strip the district court of power to review the government's performance under the agreement. The Tenth Circuit has since adopted the Rexach analysis. See, e.g., United States v. Lee, 989 F.2d 377, 380 (10th Cir. 1993); United States v. Vargas, 925 F.2d 1260, 1266 (10th Cir. 1991).2

The district court here relied upon the Eleventh Circuit's opinion in Forney to reject the analysis of Rexach. Forney, as well as the district court, reasoned that Rexach was flawed because it does not survive the Supreme Court's decision in Wade. See 9 F.3d at 1499 n. 2.3 We disagree. As we suggested above, Wade did not involve a plea agreement, and the Court specifically excluded consideration of a plea agreement in rendering its opinion.

_____

2. The Tenth Circuit's recent decision in United States v. Courtois, 131 F.3d 937 (1997), cited in the dissent, contains language seemingly to the contrary. However, Courtois did not involve an allegation of bad faith and did nothing to impugn the earlier decisions in Lee and Vargas.

3. Forney more generally suggested that courts have refused to follow a contract analysis post-Wade. See 9 F.3d at 1501 n. 4. However, both the Second Circuit's decision in United States v. Knights, 968 F.2d 1483 (2d Cir. 1992), and the Tenth Circuit's decision in United States v. Lee, 989 F.2d 377, 380 (10th Cir. 1993), were decided post-Wade and fully adopted the Rexach analysis.

9

See 504 U.S. at 185. To apply Wade in this case would reject settled Third Circuit precedent that construes plea agreements according to traditional contract principles. Accordingly, we find more persuasive the analysis of the Second Circuit in Rexach that a district court is empowered to examine for "good faith" a prosecutor's refusal to file a S 5K1.1 motion pursuant to a plea agreement that gives the prosecutor "sole discretion" to determine whether the defendant's assistance was substantial.4

As we have explained, the difference between the situation now before us and that in Wade is that the defendant here has bargained away important rights. When a defendant pleads guilty pursuant to a plea agreement, he gives up his rights to a fair trial, confrontation, and a potential acquittal by a jury; the government, in return, secures its conviction without effort or risk. When the agreement contains a S 5K1.1 provision like the one involved here, it is not the case that the clause regarding government discretion deprives the defendant of any reasonable expectation of receiving something in return for the surrender of his rights. Isaac did not strike an illusory bargain. He, as would anyone else in the same position, had a reasonable expectation that there would be a discretionary evaluation of his cooperation in good faith. As

_____

4. The dissent, post at p. 18–19, suggests that the "overwhelming majority" of other circuits to decide this issue have determined that Wade applies in the context of a plea agreement that gives the prosecution "sole discretion" to determine whether to file a S 5K1.1 motion. However, most of the cases cited by the dissent do not involve an allegation of bad faith on the part of the prosecution, nor do they apply contract principles in construing the plea agreement at issue. See United States v. Price, 95 F.3d 364 (5th Cir. 1996) (no discussion of bad faith or contract principles); United States v. Romsey, 975 F.2d 556 (8th Cir. 1992) (same); United States v. Raynor, 939 F.2d 191 (4th Cir. 1991) (same); United States v. Mote, 1996 WL 528437 (9th Cir. Sept. 19, 1996) (unpublished opinion) (no discussion of bad faith). Only the Eleventh Circuit in Forney and, arguably, the Seventh Circuit in United States v. Burrell, 963 F.2d 976, 984–85 (7th Cir. 1992), and the Fifth Circuit in United States v. Aderholt, 87 F.3d 740, 742–43 (5th Cir. 1996), have come close to addressing the precise issue decided in this case. Comparing the analysis in those cases to that of the Second and Tenth Circuits, we find the latter more persuasive.

10

a result, this is not a situation where nothing "is reasonably due [him] in the circumstances." Santobello, 404 U.S. at 262.

Nor is it the case that Isaac's reasonable expectation cannot be honored, and the government held to its bargain, without taking the courts into foreign territory and undermining the Congressional intent behind S 5K1.1. Good faith is not a concept novel to the courts. Since "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance," Restatement (Second) of Contracts S 205, determining whether an allegation of bad faith has been established is a common occurrence in the enforcement of contracts. All that our decision requires of the district courts is that they apply settled principles of contract law to a particular type of contract. Nor does our decision require a district court to interfere with the prosecutorial discretion that we believe Congress intended United States Attorneys to exercise. The sole requirement is that the government's position be based on an honest evaluation of the assistance provided and not on considerations extraneous to that assistance.5

We thus hold that a district court has jurisdiction to determine whether the government's refusal to file a S 5K1.1 motion in circumstances such as these is attributable to bad faith and, accordingly, in violation of the plea agreement. By so holding we do not suggest that an evidentiary hearing must be held every time a defendant challenges the prosecutor's exercise of discretion. Rather,

_____

5. The dissent, post at p. 18, contends that "Isaac could not have reasonably believed that the government would automatically file a S 5K1.1 motion if he cooperated." This argument misses the point. The issue is not whether the government agreed to automatically file a S 5K1.1 motion upon cooperation; rather, the issue is whether Isaac could reasonably believe that under the plea contract, the government would evaluate his cooperation in good faith. It seems to us that the analysis of the dissent leads inescapably to the conclusion that a defendant who secures a S 5K1.1 commitment from the government like the one involved here stands in exactly the same position after he extracts his bargain from the government as he did before. That analysis thus renders superfluous the provision of the plea contract concerning the filing of a S 5K1.1 motion.

11

we agree with the approach that is taken in the Second Circuit as articulated in United States v. Imtiaz, 81 F.3d 262, 264 (2d Cir. 1996):

> [T]o trigger judicial review of the prosecutor's decision, the defendant "must first allege that he . . . believes the government is acting in bad faith." United States v. Khan, 920 F.2d 1100, 1106 (2d Cir. 1990), cert. denied, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). The government "may rebut this allegation by explaining its reasons for refusing to depart." Knights, 968 F.2d at 1487. If the government explains its reasons, the defendant must "make a showing of bad faith to trigger some form of hearing on that issue." Id. (internal quotation marks omitted). Unless the government's reasons are wholly insufficient, id. at 1487–89, or unless the defendant's version of events, supported by at least some evidence, contradicts the government's explanation, see United States v. Leonard, 50 F.3d 1152, 1157–58 (2d Cir. 1995), no hearing is required.

In this case, Isaac alleged in his original motion that the government acted in bad faith when it decided not to file a S 5K1.1 motion. The district court did not specifically call upon the government to explain its refusal to file a motion because it ultimately concluded that it had no jurisdiction to review the government's decision. Before us, the government has urged only that the district court was correct in its view of the law and that the government has no duty to tender an explanation. While the record contains some explanatory comments from the prosecutor during oral argument on Isaac's motion, we conclude that the government should have the opportunity to formally state its explanation. On remand, the district court will call upon the government to explicate its reasoning and, assuming that a facially plausible reason is advanced, will provide Isaac with an opportunity to produce evidence giving reason to question the justification advanced. Only if Isaac comes forward with such evidence will the district court be

12

required to hold a hearing and make a finding as to whether the government has acted in good faith. [6]

III

Isaac raised new grounds in his motion for reconsideration in support of his contention that he should be permitted to withdraw his guilty pleas. The district court considered those grounds on their merits despite Isaac's tardiness in raising them and for that reason, we will not regard them as procedurally barred. If the district court resolves on remand that there has been no breach of the plea agreement by the government, it will still have these alternative grounds before it. Since the district court has already expressed its view regarding their merit, and since we perceive no point in waiting until an appeal from their second rejection, we now proceed to pass on the propriety of the district court's disposition of Isaac's alternative arguments.

Fed. R. Crim. P. 32(e) provides that "[i]f a motion to withdraw a plea of guilty . . . is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." It is the defendant's burden to demonstrate a "fair and just reason" for withdrawing his or her guilty plea. Government of the Virgin Islands v. Berry, 631 F.2d 214, 220 (3d Cir. 1980). Since the rule leaves discretion to the district court, we have determined that "there is no absolute right to

_____

6. Presumably based on the prosecutor's comments at oral argument, the district court's opinion observes that the government decided not to file a S 5K1.1 motion "because the information defendant provided could not be independently verified or corroborated." It did not have occasion to address whether this alone would support a finding that the government acted in good faith. We express no opinion on that issue, but it may be necessary for the district court to do so on remand. If, for example, it turns out that this is an accurate characterization of the government's reasoning and Isaac is able to show that he provided full, detailed and complete information about the commission of a crime by another which the government acknowledged that it believed to be true, the district court would have to decide whether a refusal to file based solely on the government's inability to independently corroborate Isaac's information constitutes a good faith refusal.

13

withdraw a guilty plea" and that a decision not to grant such a motion "will only be disturbed if the court has abused its discretion." Id. at 219-20; see also United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989).

With respect to the weapons count, Isaac asserted only that there was no factual basis to support his plea. The district court correctly determined that this is not the case. There is ample evidence to support a finding of guilt on this count. See United States v. Eyer, 113 F.3d 470, 475-76 (3d Cir. 1997). While it may be argued that the government's evidence does not require a finding that he carried a firearm in relation to a drug offense, that is clearly not alone enough to warrant withdrawal of a guilty plea that was knowingly and voluntarily entered. Once a defendant has entered a voluntary and informed plea, the fact that he changes his mind about his chances at trial is simply not enough to justify relieving him of the consequences of his solemn admission. See United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992); Everett v. United States, 336 F.2d 979, 982-83 (D.C. Cir. 1964).[7]

With respect to the possession with intent to distribute count, Isaac asserted only that there was no factual basis to support his plea because the government's evidence did not establish the substance in his vehicle to be marijuana. The district court correctly determined that there was a factual basis for believing that substance to be marijuana. Again, we perceive no "fair and just" reason for permitting Isaac to withdraw his plea.

IV

The judgment of the district court will be reversed and the case will be remanded to the district court for further proceedings consistent with this opinion.

_____

7. We note that Isaac asserts no other "fair and just" reason that would justify permission to withdraw his plea. The record contains no affidavit, for example, averring that his decision not to plead guilty to Count I was made in reliance on a state of the controlling law that changed between the time of his plea and the time of his motion to withdraw.

14

MANSMANN, Circuit Judge, dissenting.

In this appeal we are asked to determine the extent to which a district court may review the government's decision to refrain from filing a 5K1.1 motion where the government has entered into a plea agreement which preserves its discretion to determine whether such a motion is appropriate. While I agree with the majority that Santobello v. New York, 404 U.S. 257 (1971), provides the analytical framework we must initially apply in evaluating the terms of a plea agreement, I disagree with the majority's conclusion that where a plea agreement grants a prosecutor sole discretion to determine whether a defendant's assistance was substantial, the court must nevertheless evaluate the prosecutor's exercise of that discretion to determine if the prosecutor made his decision in good faith. In addition, I do not subscribe to the majority's adoption of the Second Circuit's approach for determining when a hearing in necessary to assess the government's good faith. Accordingly, I respectfully dissent.

I.

In our criminal justice system, we have historically entrusted the government with broad discretion to make prosecutorial decisions. Consequently, we have generally limited our review of this discretion to decisions based on an unconstitutional motive. Wade v. United States, 504 U.S. 181 (1992); Wayte v. United States, 470 U.S. 598 (1985). We have restricted our review because the appropriate exercise of prosecutorial discretion is particularly ill-suited to judicial review; prosecutorial decisions generally are not readily susceptible to the kind of analysis courts are competent to undertake. Wayte, 470 U.S. at 607. Moreover, extensive judicial supervision of prosecutorial discretion might prove detrimental to the criminal justice system; review subjects the prosecutor's motives and decisionmaking to outside inquiry thereby chilling law enforcement and undermines prosecutorial effectiveness by revealing the government's enforcement policy. Id.

Congress has deemed it appropriate to confer prosecutorial discretion upon the government for the

15

purposes of recommending a departure from sentencing guidelines due to a defendant's substantial assistance. See 18 U.S.C. S 3553(e)(1994); U.S. Sentencing Guidelines Manual (U.S.S.G.) S 5K1.1 (1997). Under section 5K1.1, a district court may award a downward departure from an otherwise mandatory sentencing range only if the government files a motion stating that the defendant has provided substantial assistance in investigating or prosecuting another person. U.S.S.G. S 5K1.1. This section gives the government the power, but not the duty, to file a motion when the defendant has substantially assisted, thereby leaving the decision of whether to file a substantial assistance motion in the sole discretion of the government. Wade, 504 U.S. at 185. A prosecutor's refusal to file a 5K1.1 motion is evaluated like all other prosecutorial decisions; it is subject to judicial review only where the defendant can make a substantial showing of an unconstitutional motive. Id. at 185-86.

A.

The Wade mandate restricting judicial review of a prosecutor's refusal to file a 5K1.1. motion does not apply, however, where a prosecutor has specifically bargained away his discretion by entering into a plea agreement which obligates the government to file a 5K1.1 motion. Wade did not involve a plea agreement. In fact, citing Santobello v. New York, 404 U.S. 257, 262-63 (1971) and United States v. Conner, 930 F.2d 1073, 1075-77 (4th Cir. 1991), the Court specifically noted that the defendant in Wade did not claim that the government's discretion to file a 5K1.1 motion was superseded by an agreement. Wade, 504 U.S. at 185. Implicit in Wade, therefore, is the proposition that a court may review a prosecutor's decision not to file a 5K1.1 motion for more than just unconstitutional motive if the prosecutor has entered into a plea agreement which specifically limits his otherwise broad discretion to file a substantial assistance motion.

The Court's references to Santobello and Conner are instructive on this point. In Santobello, the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be

16

part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262. In Conner, our sister court of appeals, for the Fourth Circuit, applied the holding of Santobello to a plea agreement in which the government promised to file a 5K1.1 motion in return for the defendant's substantial assistance. Conner, 930 F.2d at 1076-77. The court held that "once the government uses its S 5K1.1 discretion as a bargaining chip in the plea negotiation process, that discretion is circumscribed by the terms of the agreement." Id. at 1075.

After Conners, courts have consistently held that a prosecutor's plea agreement promise to file a 5K1.1 motion in exchange for a defendant's substantial assistance is subject to judicial review. See, e.g., United States v. Roman, 121 F.3d 136 (3d Cir. 1997), cert. denied, 118 S. Ct. 722 (1998); United States v. Dixon, 998 F.2d 228 (4th Cir. 1993). It is therefore clear that when a prosecutor enters into a plea agreement which diminishes his discretion to determine whether the defendant has rendered substantial assistance, courts may review a prosecutor's decision not to file a 5K1.1 motion to determine if the defendant's assistance was substantial and if the prosecutor acted in good faith in failing to file the motion.

B.

The more interesting question presented by this appeal, however, is whether a district court may review the government's decision to refrain from filing a 5K1.1 motion when the plea agreement provides that the government retains sole discretion to determine whether the motion is appropriate.

To answer this question, we must start with the approach to analyzing plea agreements annunciated in Santobello. Under Santobello, we must determine whether the prosecutor has made a promise to file a 5K1.1 motion which induced the defendant to enter into the plea agreement. As noted by the majority, the plea agreement here provides, in relevant part, as follows:

> 1. The defendant agrees to cooperate fully and truthfully with the government . . . .

17

4. If the Government in its sole discretion determines that the defendant has fulfilled his obligations of cooperation as set forth above, at the time of sentencing or within one (1) year thereof the government will . . .

b. Make a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guideline S 5K1.1, if the government, it in its sole discretion, determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense . . . .

App. at 24, 27. Given that the plea agreement clearly states that a 5K1.1 motion will only be filed if the government, in its sole discretion, determines that Isaac has provided substantial assistance, Isaac could not have reasonably believed that the government would automatically file a 5K1.1 motion if he cooperated. Accordingly, under Santobello, the government has not made a promise to file a 5K1.1 motion which reasonably induced Isaac to enter the plea agreement.

In the absence of a promise by the prosecutor tofile a 5K1.1 motion which induced Isaac to enter the plea agreement, the principles set forth in Santobello are inapposite. We are therefore left with the same prosecutorial discretion that was at issue in Wade; discretion that has not been limited by a plea agreement. In this situation, Wade inescapably governs the extent of our review. Accordingly, because Isaac concedes that there is no reason to believe that the government's refusal to file a 5K1.1 motion was based on constitutionally suspect grounds, the district court correctly refused to review that decision pursuant to Wade.

The overwhelming majority of our sister courts that have decided this issue have reached this conclusion. See, e.g., United States v. Courtois, 131 F.3d 937, 939 (10th Cir. 1997)(holding that where plea agreement states that the discretion to file a downward departure motion rests with the government, the government does not obligate itself to file a 5K1.1 motion and the court reviews only for

18

unconstitutional motive); United States v. Mote, 97 F.3d 1462, 1996 WL 528437 (9th Cir. September 19, 1996)(unpublished opinion)(holding that government does not breach plea agreement by refusing to file 5K1.1 motion where agreement states that the government alone will determine whether to file the motion); United States v. Price, 95 F.3d 364, 368 (5th Cir. 1996)(stating "where the plea agreement expressly states that the government retains `sole discretion' over the decision as to whether or not to submit a motion, we have held that a refusal to do so is reviewable only for unconstitutional motive."); United States v. Forney, 9 F.3d 1492 (11th Cir. 1993); United States v. Romsey, 975 F.2d 556 (8th Cir. 1992)(holding that where plea agreement preserves prosecutorial discretion tofile 5K1.1 motion, court will only review for unconstitutional motive); United States v. Burrell, 963 F.2d 976 (7th Cir. 1992); United States v. Raynor, 939 F.2d 191, 195 (4th Cir. 1991)(holding that where plea agreement did not promise a 5K1.1 motion, court correctly refused to inquire into government's reasons for not filing the motion ).1

In United States v. Burrell, 963 F.2d 976 (7th Cir. 1992), for example, the Court of Appeals for the Seventh Circuit rejected the defendant's argument that the government had breached its plea agreement by refusing to file a 5K1.1 motion where the plea agreement granted the government sole discretion to file the motion. The court reasoned that because the agreement did not require the government to move for a departure in exchange for the defendant's guilty plea, there was no breach of the agreement. Id. at 985. The

_____

1. I disagree with the majority's characterization of Mote, Price, Romsey, and Raynor. These cases do apply contract principles in construing the plea agreements at issue. See, e.g., Mote, 1996 WL 528437 at *1 (stating "[a] plea agreement is contractual in nature and is subject to contract law standards"); Price, 95 F.3d at 368 (stating that issue turns on "specific language of the plea agreement at issue"); Romsey, 975 F.2d at 558 (basing decision on "carefully-worded plea agreement"); Raynor, 939 F.2d at 195 (holding that government did not promise to file a 5K1.1 motion under terms of plea agreement). In addition, each of these cases holds that where the government has entered into a plea agreement which preserves its discretion to file a 5K1.1 motion, the courts may only review for unconstitutional motive. Under this rule, allegations of prosecutorial bad faith are irrelevant.

19

court further determined that because the defendant had not asserted that the government's refusal was based on an unconstitutional motive, the government's refusal to move for a departure was within its prosecutorial discretion. Id.

Similarly, in United States v. Forney, 9 F.3d 1492, 1501–02 (11th Cir. 1993), the Court of Appeals for the Eleventh Circuit applied the Wade standard to a prosecutor's decision not to file a 5K1.1 motion where the plea agreement preserved the government's prosecutorial discretion. The plea agreement at issue in Forney required only that the government consider filing a 5K1.1 motion. The court reasoned that because there was no evidence that the government did not consider filing the motion, which is all it promised to do, the government had not failed to comply with the explicit provisions of the plea agreement. Forney, 9 F.3d at 1500 n.2. The court concluded that the contract analysis suggested by Santobello therefore was not implicated. Id.

C.

The majority's holding that when a plea agreement is involved courts must review a prosecutor's failure to file a 5K1.1 motion for good faith even if the plea agreement reserves the prosecutor's discretion to make the motion fails to adhere faithfully to Wayte, Santobello and Wade and, moreover, undermines the policies underlying those decisions.

I believe the majority's position contravenes the basic policies the Court outlined in Wayte. Wayte teaches that judicial review is inappropriate for prosecutorial decisions that are not readily susceptible to the kind of analysis courts are competent to undertake. Wayte, 470 U.S. at 607. Because a prosecutor can legitimately exercise his discretion to not file a substantial assistance motion for a variety of reasons which are unrelated to the amount of assistance the defendant has provided, where a plea agreement specifically preserves that discretion, courts are not competent to review the decision not to file. See generally, Wade, 504 U.S. at 187 (noting that the government may choose not to move "simply on its rational

20

assessment of the cost and benefit that wouldflow from moving"). Wayte further emphasizes that review of prosecutorial discretion detrimentally affects the administration of justice. Wayte, 470 U.S. at 607. Where a plea agreement specifically preserves prosecutorial discretion, judicial scrutiny of the prosecutor's decision not to file a substantial assistance motion chills the government's ability effectively to obtain a defendant's cooperation by undermining the government's policy on what assistance should be deemed to be substantial.

The majority's position also contravenes Santobello. The Court explained in Santobello that plea agreements are an essential and highly desirable component of the administration of justice and are to be encouraged when properly obtained. Santobello, 404 U.S. at 260-61. As long as the defendant has been properly apprised of the terms of the agreement and voluntarily enters the plea agreement, the plea agreement must be enforced. Santobello requires only that the defendant receive "what is reasonably due in the circumstances." Id. at 262. Where, as here, a plea agreement provides that the prosecutor retains sole discretion to file a substantial assistance motion, the defendant cannot sensibly contend that he did not receive what he was reasonably due when the prosecutor exercises the discretion he has retained by not filing the motion. The majority's contrary position is inconsistent with the basic premise of Santobello that a plea bargain, like any contract, should be interpreted in accordance with the reasonable expectations of the parties.2

_____

2. The majority's analysis disregards the government's reasonable expectations in entering into the plea agreement with Isaac. As noted by the court in Forney:

> [T]he government drafts a plea agreement requiring cooperation from
> a defendant so that it will not be obligated to make a 5K1.1 motion
> unless the assistance, which may have been misrepresented by the
> defendant prior to entering the plea agreement or for the purpose

of

> obtaining a plea agreement, is useful.

Forney, 9 F.3d at 1503 n.4. The government's expectation that the unambiguous sole discretion language in Isaac's plea agreement would accomplish this goal is inherently reasonable and should be afforded due consideration.

21

In light of the policy concerns underlying Wayte and Wade and the fact that, under Santobello, the plea agreement here does not abrogate but rather preserves the extent of prosecutorial discretion at issue in Wade, I must dissent. While Wade may not apply to a case where a prosecutor has bargained away his discretion, this is not such a case.

Furthermore, the majority's position fails to take into account that Congress has specifically set forth a statutory scheme which places the broad discretion to determine whether a defendant's assistance is substantial in the hands of prosecutors, not judges.3 Absent a plea agreement in which the government specifically bargains away this broad discretion, the courts must not interfere with the system Congress established. As aptly noted by one court, "[a]ny change in governmental discretion relating to 5K1.1 motions stated in these statutes must come from Congress or the Sentencing Commission, and not from the courts." Forney, 9 F.3d at 1502 n.4.

II.

I also disagree with the majority's adoption of the Second Circuit's test in United States v. Imtiaz, 81 F.3d 262 (2d Cir. 1996) which sets forth the burdens of production that would trigger judicial review. Under Imtiaz, a defendant's mere allegation that the government acted in bad faith is sufficient to trigger the government's obligation to explain its reasoning for refusing to depart. Imtiaz, 81 F.3d at 264. Based on the previously articulated policy concerns relating to prosecutorial discretion, at a minimum the defendant should be required to produce some evidence that the government has acted in bad faith before the government should be required to state its reasons for refusing to file a

_____

3. As several courts have recognized, the government is not only in the best position to determine whether the defendant has provided substantial assistance but also has a very strong incentive to exercise its
discretion fairly in order to encourage future cooperation. Forney, 9 F.3d at 1503 n.4; United States v. Doe, 934 F.2d 353, 358 (D.C. Cir. 1991); United States v. La Guardia, 902 F.2d 1010, 1015–16 (1st Cir. 1990).

22

substantial assistance motion. Accordingly, I would not adopt the Imtiaz approach.

III.

For the foregoing reasons, I would affirm the district court's order in its entirety.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit