USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1319

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JOHN DOE,

 Defendant Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Juan M. Perez-Gimenez, U.S. District Judge}
 [Hon. Daniel R. Dominguez, U.S. District Judge]

 Before
 
 Boudin, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lynch, Circuit Judge. 
 
 

 Frank D. Inserni, by appointment of the court, on brief for
appellant.
 Guillermo Gil, United States Attorney, Nelson Perez-Sosa,
Assistant United States Attorney, and Jose A. Quiles-Espinosa,
Senior Litigation Counsel, on brief for the United States.

March 12, 1999

 
 
 BOUDIN, Circuit Judge. The defendant John Doe (a
pseudonym for reasons that will become apparent) was convicted on
November 4, 1994, of three counts of possession with intent to
distribute cocaine. On January 27, 1995, he was sentenced to the
statutory minimum sentence of ten years imprisonment. Doe was
indicted again on June 14, 1995, for another drug offense and a
plea agreement was executed in that second case on August 15, 1995. 
In that agreement, Doe agreed to cooperate with the United States
and to provide it with information. In exchange, the government
offered potential benefits to Doe in both cases.
 Specifically, the government agreed to recommend that
Doe's new sentence, not yet imposed, be served concurrently with
his sentence in the earlier conviction and held out the possibility
of filing a motion for a downward departure in both cases. See 18
U.S.C. 3553(e); U.S.S.G. 5K1.1; Fed. R. Crim. P. 35(b). At
sentencing in the second case, the government did recommend that
the sentences be served concurrently, but it declined to file any
downward departure motion in either case.
 Doe then sought in both cases specific performance of the
plea agreement, alleging that the government was required to seek
a reduced sentence because he had provided useful information to
the government. A hearing was held. The government pointed out
that it had explicitly retained in the agreement "sole discretion"
over whether to file the motion, and that it believed that the
defendant had started to cooperate too late. Doe said in response
that his cooperation was not too late--the government simply failed
to follow up his information until any actions it could have
brought based on his evidence were time-barred.
 On July 31, 1997, the judges responsible for sentencing
in both cases issued a joint opinion and order, finding that Doe
had not colorably alleged that unconstitutional bias (e.g., racial
discrimination) lay behind the government's refusal to file the
motions, and that they could not review the government's decision
for any other reason, citing Wade v. United States, 504 U.S. 181,
185 (1992). The defendant moved for reconsideration, which was
denied in the first case on November 14, 1997. It is Doe's appeal
from this denial which is now before us.
 It is clear that Doe did not colorably allege an
unconstitutional bias on the part of the government, although
provided full opportunity to do so. Nor do we think that his
allegations, even if taken at face value, show that the
government's refusal to file a substantial assistance motion "was
not rationally related to any legitimate government end," Wade, 504
U.S. at 186, the other potential ground left open by Wade for
challenging the government's refusal to move for a downward
departure. The motion is a reward for providing "substantial
assistance"; a refusal to provide the reward, if the government got
no benefit from the information, is hardly a decision "not
rationally related" to a legitimate government end even if we
assume that the police fumbled in failing to exploit whatever leads
were given to them.
 Alternatively, the defendant argues that he is entitled
to attack the government's refusal to move for a downward departure 
based on "bad faith"--at least where, as here, the government has
signed a plea agreement. The agreement matters, he says, because
the Supreme Court has said in other contexts that a plea agreement
should be treated as a contract, Santobello v. New York, 404 U.S.
257 (1971), and courts often say that an implied covenant of good
faith is implicit in a contract.
 Wade did not involve a plea agreement and so does not
directly control this question, although it does have implications. 
The circuits appear to be divided on whether the government's
refusal to move for downward departure under the standard plea
agreement can be attacked on the grounds that it acted in bad faith
where the allegations do not also qualify under Wade. Five
circuits have assumed or acknowledged such an exception, three
circuits point the other way, and most of the statements either
way are dicta. This circuit has not squarely spoken.
 Two members of the panel (Judge Boudin and Judge Lynch)
are skeptical about whether a good faith exception makes sense or
comports with the thrust of Wade, while a third member (Judge
Bownes) favors the exception. In its favor are the facts that it
can arguably be fitted within conventional contract doctrine and
has the support of more circuits than the contrary view. It can
also be argued that the Pandora's Box of collateral inquiries
opened up by such an exception could be limited if a sufficiently
high threshold were established for the allegations needed to
trigger the inquiry.
 On the other side, Wade may be read as expressing a very
strong policy in favor of giving the government almost complete
discretion to decide whether to seek a downward departure on
substantial assistance grounds. It may also seem odd to rely
heavily on the presence of a plea agreement where, as here, the
agreement itself explicitly warns the defendant that the government
has reserved "sole discretion" over the decision whether to move--a
warning that comes about as close to negating any prospect of
judicial review (outside of Wade) as one might reasonably expect.
 Of course, one might question whether the government
should be allowed to shield from review actions taken in "bad
faith" but the practical concerns are real ones. Defendants, asked
for information to incriminate others, have good reasons to fear
for their safety and, unless the prosecutor holds the whip hand,
the defendant may offer up some information and hold back the more
vital balance in the hope that the court will find the government
"unreasonable" and infer "bad faith." Further, an inquiry into the
adequacy of cooperation, if one is pursued, almost certainly would
require disclosure by the government as to other investigations,
information that may be highly confidential and hard for a court to
appraise.
 We have laid out the concerns but think that resolution
of the issue--to the extent that it can be resolved by a single,
flat rule (obviously, the language of the agreement could affect
the outcome)--should await a case in which resolution is essential. 
Here, even if "bad faith" were the standard, the defendant loses. 
The present allegations, even if fully accepted, amount to nothing
more than the charge that the prosecutors or police were initially
encouraged by information that Doe provided, were slothful in
exploiting it and ultimately came away with nothing. Basically,
this amounts simply to a claim that the government acted carelessly
or unreasonably.
 If a downward departure for substantial assistance could
be ordered by the court under a reasonableness standard, virtually
every refusal by the prosecutor would be open to judicial review so
long as the defendant tendered some information. Practical
considerations aside, this is clearly inconsistent with the intent
of Congress and the Commission as construed in Wade, finds no
purchase in the language of the standard plea agreement, and
conflicts with precedent in numerous circuits rejecting the
possibility of attacks for "arbitrariness" on government refusals
to move for downward departures.
 Finally, we turn to Doe's argument that a specific
provision of the plea agreement in this case cabined the discretion
of the government and that a hearing was required to determine
whether the government breached this provision. Although the
agreement stated in paragraph 8 that a downward departure motion
rested in the "sole" discretion of the government, it also stated
in paragraph 5 that "the defendant's failure to 'make a case' shall
not relieve the government of exercising its discretion" under Fed.
R. Crim. P. 35(b) or section 5K1.1.
 The government can, under Santobello, limit itself by
contract and we think that there is some tension between the
government's paragraph 5 promise and the statement of its counsel--
if it was in fact made--that Doe's cooperation came too late. It
is fairly easy in context to interpret "came too late" as "came too
late for us to make a case." At the very least, there might appear
to be a basis for further exploration of the matter in an
evidentiary hearing. 
 Asked by us for a response, the government asserts that
one can provide substantial assistance in various ways, other than
by making a case; that in this instance Doe failed to provide
substantial assistance; and--most important--that a new development
coming after oral argument in this case confirms that Doe failed to
provide substantial assistance. Specifically, the district judge
in the companion case (see note 1, above) has recently concluded,
after an evidentiary hearing, that Doe did not provide substantial
assistance to the government following the plea agreement.
 Without this latter finding, we might well have been
inclined to remand to the district court to hold an evidentiary
hearing on the question whether the government violated paragraph
5, but this course is now pointless. On any reading, the
government certainly had no obligation to move for relief unless
Doe provided substantial assistance, and it does not matter that
this finding has been made by a different judge: it is binding as
between Doe and the government unless set aside on appeal. Cf.United States v. Weston, 960 F.2d 212, 217 (1st Cir. 1992);
Hernandez-Uribe v. United States, 515 F.2d 20, 21-22 (8th Cir.
1975).
 The possibility remains that Doe may appeal the
determination in the companion case. Accordingly, we make it
explicit that our affirmance in this case rests, as to the contract
claim, on the finding in the companion case. If Doe overturns that
finding on appeal, he should move in this court for us to reopen
this appeal, citing this explicit reservation. However, at the
present time the finding in the companion case is an effective bar
to any relief in this case.
 Affirmed.
 Concurrence follows.
 BOWNES, Senior Circuit Judge, concurring. I concur in
the result. The defendant here plainly failed to demonstrate
unconstitutional motive or bad faith on the part of the government
in declining to seek a downward departure. I write separately,
however, to explain briefly why the rule of a majority of the
circuits which permits judicial review of an alleged bad-faith
refusal by the government to file a 5K1.1 motion pursuant to a
cooperation agreement makes good sense to me.
 Plea agreements, because they are contracts, impose on
each party a duty of good faith and fair dealing. See, e.g.,
United States v. Isaac, 141 F.3d 477, 484 (3d Cir. 1998) (holding
that government's refusal to file 5K1.1 motion violates plea
agreement if attributable to bad faith); United States v. Jones, 58
F.3d 688, 692 (D.C. Cir. 1995) (stating that substantial-assistance
provision in plea agreement "provides additional protection"
because "[l]ike all contracts, it includes an implied obligation of
good faith and fair dealing"). 
 Under the typical plea agreement, a defendant promises to
provide substantial assistance to the satisfaction of the
government; in turn, a defendant has the right to expect that the
government will make that evaluation in good faith. The government
promises that, if it is satisfied with the defendant's cooperation,
it shall make the defendant's efforts known to the sentencing judge
by filing a 5K1.1 letter. This motion is essential; without it,
the sentencing judge ordinarily is without jurisdiction to depart
downward and the cooperating defendant's efforts go unrewarded. 
Review of the government's decision ensures that the agreement is
faithfully carried out by both sides. See United States v.
Papaleo, 853 F.2d 16, 19 (1st Cir. 1988) ("A contractual approach
to plea agreements ensures not only that constitutional rights are
respected, but also that the integrity of the criminal process is
upheld"). 
 Recognizing that a remedy is available when the
government breaks its conditional promise is wholly consistent with
Wade v. United States, 504 U.S. 181 (1992). In that case, the
Supreme Court held that, in the absence of a plea agreement, a
defendant is entitled to relief only if a prosecutor's decision not
to file a substantial-assistance motion was motivated by an
unconstitutional consideration or if the government's refusal "was
not rationally related to any legitimate Government end." Id. at
186. It would be strange indeed if a defendant had less protection
where he actually obtained an binding cooperation agreement than
where, as in Wade, no conditional promise to file a 5K1.1 motion
had been made by the government. 
 I do not share my fellow panel members' fear that
inquiring whether the government has complied with the terms of a
plea agreement in good faith would necessitate disclosure of
confidential information in all cases or involve questions that are
difficult for a court to assess. Wade itself provides a standard
that is both rigorous and sufficiently protective of the
government: a defendant must make a "substantial threshold
showing" of unconstitutional motive or bad faith before he is
entitled to discovery or an evidentiary hearing. Id. at 186. This
approach would prevent the dangerous prospect of a prosecutor who,
after having elicited useful information by way of a plea
agreement, deliberately chooses not to fulfill his end of the
bargain knowing that his decision to renege is almost completely
insulated from judicial scrutiny.
 The contours of both sides of the debate now having been
sketched out, I agree that resolution of the issue is best left for
another day.