

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-16-2005

# USA v. Jaimes-Lopez

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3289

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Jaimes-Lopez" (2005). *2005 Decisions.* Paper 225.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/225

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3289

UNITED STATES OF AMERICA

v.

MARTIN JAIMES-LOPEZ,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 04-cr-00164
(Honorable Mary A. McLaughlin)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 17, 2005

Before: SCIRICA, *Chief Judge*, VAN ANTWERPEN and COWEN, *Circuit Judges*

(Filed:   November 16, 2005)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

In this criminal appeal invoking the Fifth Amendment's Due Process clause,

Appellant Martin Jaimes-Lopez seeks remand for the purposes of re-sentencing.  The

District Court held there was no due process violation, and the government did not bind

itself to recommending a downward departure from the applicable sentence under the Federal Sentencing Guidelines. We will affirm.

## I.

The facts are undisputed. Because we write only for the parties, an abbreviated recitation will suffice. After being arrested in Norristown, Pennsylvania on February 3, 2004 in connection with an alien smuggling operation, Jaimes-Lopez waived his *Miranda* rights and agreed to be interviewed by immigration agents. He detailed to those agents the events leading up to his arrest, including his conversation with his primary contact, "Nero," in coordinating the smuggling operation. After Jaimes-Lopez admittedly gave false information, one immigration agent asked him, "do you want to go home or do you want to go to jail?" Jaimes-Lopez responded, "I want to go home." The agent responded, "well, then, tell me the whole truth," after which Jaimes-Lopez said he told them the truth.

Agents then asked him if he was willing to make a call to "Nero," and, after Jaimes-Lopez hestitated, told him "come on, let's go, this is going to help you a lot." Jaimes-Lopez placed a call to "Nero," who subsequently made inculpatory statements.

Jaimes-Lopez then met with an Assistant United States Attorney, and offered some information about "Nero" and the smuggling operation. When asked by the prosecutor to obtain additional information about "Nero," Jaimes-Lopez declined.

On April 15, 2004, Jaimes-Lopez entered an open guilty plea to his indictment on two counts of alien smuggling in violation of 8 U.S.C. § 1324(a)(1). During the guilty plea colloquy, the District Court informed Jaimes-Lopez that the government would not file a motion for a downward departure on his behalf. When asked by the District Court whether it was "correct" that "the Government has not made any agreement whatsoever," Jaimes-Lopez responded, "Yes, your honor." When the government, in response to a disagreement between the parties, stated "I've informed [defense counsel] prior to today that this is an open plea and his client will not receive a 5(k), and that he should make his decision whether to plead guilty or not based on that information," defense counsel responded "That's correct, your Honor. It's in no way conditional upon anything the Government is going to do."

Prior to sentencing, Jaimes-Lopez filed a motion seeking to compel the government to file a motion for a downward departure (§ 5k1.1 under the United States Sentencing Guidelines), claiming the agents who arrested him promised a reduced sentence for his cooperation.

The District Court held the immigration agent lacked authority to bind the government and, because the conversation was part of "the normal give and take that happens to agents as they're talking to people" prior to the AUSA's involvement, no actual promise had been made. The District Court sentenced Jaimes-Lopez to 15 months

3

of imprisonment, followed by a three-year period of supervised release, and waived a special assessment of $200. This appeal followed.

## II.

Jaimes-Lopez appeals contending (1) the immigration agents' representations to Jaimes-Lopez bind the government's sentencing recommendations, (2) the immigration agents promised him a downward departure recommendation in return for his cooperation, and (3) the government's decision not to file a motion for downward departure violated due process.[1]

## A.

The government contends any claimed actual or apparent authority must fail in light of what transpired at the time of his guilty plea. The responses by Jaimes-Lopez and his lawyer, the government argues, are evidence of Jaimes-Lopez's lack of reliance on the

---

[1] Whether the immigration agents had authority to bind the government is a question of law, and our review is plenary. *See United States v. Igbonwa*, 120 F.3d 437, 442 (3d Cir. 1997).

Whether the immigration agents made a promise to Jaimes-Lopez is a question of fact. We review for clear error. Fed. R. Civ. P. 52(a); *Igbonwa*, 120 F.3d at 440-41. Under this standard, a finding is "clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Igbonwa*, 120 F.3d at 440 (citing *United States v. Bogusz*, 43 F.3d 82, 85 (3d Cir. 1994)) (citations omitted). We "consider whether there is enough evidence in the record to support the factual findings of the district court." *Id.* at 441 (quoting *Cooper v. Tard*, 855 F.2d 125, 126 (3d Cir. 1988)).

Whether the government's decision not to file a downward departure motion did not violate due process is a question of law, and our review is plenary. *United States v. Isaac*, 141 F.3d 477, 481 (3d Cir. 1998).

agents' statements. We agree that Jaimes-Lopez's response of "Yes, your honor" to the District Court's question whether it was "correct" that "the Government has not made any agreement whatsoever" strongly demonstrates his lack of reliance on any of the agents' statements. This lack of reliance is supported by his attorney's statement to the District Court that Jaimes-Lopez's guilty plea is "in no way conditional upon anything the Government is going to do."[2]

Even assuming the immigration agent had authority to bind the government, defendant's arguments would still fail.[3] For Jaimes-Lopez to prevail, the immigration agents' attempts to induce his cooperation must constitute a promise that the government would file a motion for downward departure. Under the clear error standard, we give deference to the District Court's factual findings so long as there is sufficient evidence in the record to support those findings. At Jaimes-Lopez's sentencing hearing, the District Court found the immigration agents' colloquy with Jaimes-Lopez was part of "the normal give and take" that occurs prior to formal discussions with the AUSA. We see no error here.

---

[2] The government does not contend the defendant waived the issue at the time of his guilty plea. *See, e.g.*, *United States v. Ptomey*, 366 F.2d 759, 760 (3d Cir. 1966) ("A plea of guilty is a waiver of all nonjurisdictional defects and defenses and constitutes an admission of guilt."). Because this matter was not briefed, we will not address it.

[3] If there were authority here, it could only be apparent authority, not actual authority. Nonetheless, we doubt that apparent authority could bind the government's sentencing recommendations. However, because this is not essential to our decision, we do not decide the question.

Jaimes-Lopez relies on two of the immigration agents' statements: first, "do you want to go home or do you want to go to jail?", asked in response to the false information he admittedly supplied to the agents, and second, "c'mon, let's go, this is going to help you a lot." But at no point did any agent make a promise on his sentence or promise to recommend a downward departure. Nor was there even a passing reference to "downward departure," "recommendation," "plea agreement," or "5k1.1." At best, the agents' remarks were ambiguous. We see no error here. On review, we are not "left with a definite and firm conviction that a mistake has been committed," *Igbonwa*, 120 F.3d 437, 440 (3d Cir. 1997).[4]

Because no promise had been made, the District Court did not err in not finding a due process violation. "A prosecutor's discretion to file [a § 5k1.1 motion] [is] almost unfettered." *United States v. Isaac*, 141 F.3d 477, 481 (3d Cir. 1998) (citing *Wade v. United States*, 504 U.S. 181, 185-86 (1992)). Although this discretion "is subject to constitutional limitations that district courts can enforce," *Wade*, 504 U.S. at 185, those limitations do not encompass the full range of bad-faith conduct. Rather, a District Court must grant a remedy only if the government's refusal "was based on an *unconstitutional motive*," such as "the defendant's race or religion." *Id.* at 531; *accord Isaac*, 141 F.3d at

---

[4]We also agree with the government that, even if it had made a binding promise to Jaimes-Lopez, his refusal to give additional information at the prosecutor's request nullified the government's obligations under that promise.

6

481.[5]  Because no unconstitutional motive is apparent in this case, and because none has been argued by Jaimes-Lopez,[6] the District Court did not err in not finding a due process violation.

## III.

We will affirm judgment of sentence.

---

[5]Jaimes-Lopez contends that we developed a "bad faith or rationality" test in *Isaac*, 141 F.3d at 481-83, "if a prosecutor reneged on a cooperation after a plea agreement had been negotiated."  But *Isaac* and the cases on which it relied focused on written plea agreements, absent here, which lent themselves to interpretation under the basic contract principles informing "bad faith."  Regardless, no promise was made here.

[6]In claiming the government's conduct violated due process, Jaimes-Lopez argues concepts of "fundamental fairness" are at play.  But this applies only to conduct implicating unconstitutional discrimination, absent here.