**UNITED STATES of America**

v.

**John MOSCAHLAIDIS, Appellant.**

No. 88–5728.

United States Court of Appeals,
Third Circuit.

Argued Jan. 30, 1989.
Decided March 9, 1989.

Lawrence S. Goldman (argued), Goldman & Hafetz, New York City, Lawrence S. Horn, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, N.J., Richard M. Steingard, of counsel, for appellant.

Samuel A. Alito, Jr., U.S. Atty., Marion Percell (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

Before HUTCHINSON, SCIRICA, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant, John Moscahlaidis, appeals from a final judgment of conviction and sentence rendered by the United States District Court for the District of New Jersey. Appellant claims that the government violated the plea agreement it entered into with appellant. He seeks to have this court vacate his sentence and remand his case for resentencing before a different judge. We agree with appellant that the government violated the plea agreement and vacate his sentence. We remand, however, to the district court for it to determine the appropriate remedy.

### I.

On June 27, 1988, the United States Attorney filed a two-count information in the United States District Court in New Jersey charging appellant with violations of 18 U.S.C. §§ 371 and 545, conspiracy to import contaminated cheese and defraud the United States and fraudulent importation of merchandise contrary to law. On the same date, appellant pled guilty pursuant to a plea agreement. In pertinent part, the plea agreement provides:

It is understood that the sentence to be imposed upon John Moscahlaidis is within the sole discretion of the sentencing Judge, who may impose the maximum sentence. This office cannot and does not make any promise or representation as to what sentence John Moscahlaidis will receive and will not take a position relative to whether or not a custodial sentence shall be imposed on John Moscahlaidis but, pursuant to Federal Rules of Criminal Procedure 11(e)(1)(B), will recommend to the sentencing Judge that if a custodial sentence is imposed on John Moscahlaidis, it not exceed one year. It is understood that the court will

not be bound by this recommendation and will be fully free to exercise its discretion in this as in other respects.

Furthermore, this office will inform the sentencing Judge and the Probation Office of: (1) this agreement; (2) the full nature and extent of John Moscahlaidis' activities with respect to this case; (3) the full nature and extent of John Moscahlaidis' cooperation with this office; and (4) all other information, favorable or otherwise, in its possession relevant to the sentence, including the terms of any civil settlement which John Moscahlaidis may effect with Customs. It is understood that the United States specifically reserves the right to correct factual misstatements relating to sentencing proceedings and that this agreement in no way affects or limits this office's right to respond to and take positions on postsentencing motions which relate to parole or reduction or modification of sentence.

Appellant also agreed to pay a fine of $3,250,000.

On September 2, 1988, the United States Attorney submitted a forty-page sentencing memorandum which contained the following phrases:

Moscahlaidis' ability to distinguish between clean and contaminated cheese sources and his deliberate decision to import and sell contaminated cheese, knowing it to be for human consumption, evidence the depth of Moscahlaidis' greed and moral bankruptcy. Joint App. at 075a, U.S. v. Moscahlaidis (No. 88–5728). "It is well within the reach of most white-collar criminals to assume an air of irreproachable virtue, especially. when they're about to be sentenced." Moscahlaidis cannot maintain even the air of irreproachable virtue with any degree of legitimacy. Moscahlaidis is not just a white-collar criminal. Joint App. at 088a–089a.

This demonic pursuit demonstrates Moscahlaidis' utter contempt for the welfare of his fellow man. Joint App. at 089a.

To preserve his fetid empire, he relentlessly pursued a course of corruption and obstruction of justice. Joint App. at 088a.

Consistent with the conditions undertaken by the government in its plea agreement with this defendant, the United States will make no recommendation as to an appropriate sentence. However, should the court elect to impose a custodial sentence on Moscahlaidis, the United States is bound to recommend that the custodial term not exceed one year imprisonment. This recommendation is part of the plea agreement between the defendant and the United States. It is not binding upon the court. Joint App. 101a.

Appellant objected to these phrases, as well as many others, and discussed his objections with the United States Attorney's office. In response, the government changed "fetid empire" to "empire," "the United States is bound to recommend" to "the United States recommends" and deleted "this demonic pursuit demonstrates Moscahlaidis' utter contempt for the welfare of his fellow man" and resubmitted its sentencing memorandum.[1] The government's changes did not appease appellant's objections.

At his first opportunity during the sentencing hearing, appellant told the court that he had serious objections to the government's sentencing memorandum. Appellant asserted that "the government's sentencing memorandum violates the letter and spirit of the plea agreement." Joint App. at 185a. Appellant argued that the sentencing memorandum undermined the government's agreement not to take a position relative to whether or not a custodial sentence shall be imposed. The court disagreed with appellant's characterization stating that "I didn't get that impression in reading this government submission." Joint App. at 187a. Appellant's counsel responded that if that was the court's position, he would "not beat a dead horse," and

1. The government urges that we ignore its first memorandum. We cannot do so. Both memoranda were submitted to the court which indicated it had read all government submissions.

he moved on to other issues. Joint App. at 188a.

As to appellant's cooperation with the government, the sentencing memorandum indicated that appellant "readily admitted to the most heinous aspects of his criminal activities. However, he was unwilling to conclude on other aspect [sic] of his crimes, some of which were comparatively insignificant." Joint App. at 129a. The government did not mention appellant's cooperation in its brief remarks at the sentencing hearing.

## II.

In this appeal, appellant presents three issues: first, whether the government breached its promise not to take a position relative to whether appellant should receive a custodial sentence by its sentencing memorandum and conduct at the sentencing hearing; second, whether the government breached its promise to inform the sentencing judge of the "full nature and extent" of appellant's cooperation with the government; and third, if we hold that a breach occurred, whether appellant should be resentenced before a different judge.

■ The government claims that appellant waived the issue of breach by failing to properly object to it at his sentencing hearing. We disagree. Even if we agree that appellant did not properly object to the plea agreement violation at the sentencing hearing, such failure does not constitute a waiver. *United States v. Greenwood*, 812 F.2d 632 (10th Cir.1987); *United States v. Brody*, 808 F.2d 944 (2d Cir.1986); *Paradiso v. United States*, 689 F.2d 28, 30 (2d Cir.1982), *cert. denied*, 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983) ("Ordinarily there is no requirement that a defendant object to the violation of a plea agreement at the time of sentencing, and defendant's claim that his plea agreement was violated is not waived by his failure to raise the issue at sentencing."); *United States v. Corsentino*, 685 F.2d 48 (2d Cir.1982). *See also, United States v. Benchimol*, 471 U.S. 453, 457, 105 S.Ct. 2103, 2105, 85 L.Ed.2d 462 (1985) (Stevens J., concurring) ("If the government erred in failing to recommend

affirmatively the proper sentence, the time to object was at the sentencing hearing or on direct appeal."). Whether or not appellant raised his objections before the trial court, he does so now on direct appeal.

## III.

■ The government argues that the standard of review should be plain error. It is not. This case presents three questions, each with a different scope of review. First, what are the facts of the case, i.e., what are the terms of the agreement and the conduct of the government; second, whether the conduct of the government violated the terms of the plea agreement; and third, what is the appropriate remedy if the court concludes that a violation occurred. The facts of the case, if disputed, are determined by the district court and our review of those findings is limited to a clearly erroneous standard. *United States v. Carrillo*, 709 F.2d 35 (9th Cir.1983). Whether the government's conduct violates the terms of the plea agreement is a question of law and our review is plenary. *United States v. Miller*, 565 F.2d 1273 (3d Cir.1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978); *United States v. Crusco*, 536 F.2d 21 (3d Cir.1976). As to the third question, the Supreme Court, in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), concluded that once the court finds a breach of the plea agreement by the government the case must be remanded for either resentencing or withdrawal of appellant's guilty plea. Under these standards, we review this case.

## IV.

Appellant argues that the government breached its promise not to take a position regarding appellant's sentence by submitting a sentencing memorandum which was "highly critical, opprobrious and inflammatory." Amended Brief for Appellant at 4. He also argues that the government failed to inform the court of the full nature and extent of appellant's cooperation as required under the plea agreement.

The Supreme Court, in *Santobello,* 404 U.S. 257, 92 S.Ct. 495, held that when a prosecutor makes a promise in a plea agreement, he must keep that promise. The Court stated that there must be "fairness in securing agreement between an accused and a prosecutor." *Santobello,* 404 U.S. at 261, 92 S.Ct. at 498. In this circuit, "the government must adhere strictly to the terms of the bargain it strikes with defendants." *United States v. Miller,* 565 F.2d 1273, 1274 (3d Cir.1977). When the government fails to adhere to the plea agreement, the sentence must be vacated and the case remanded to the district court to either allow the appellant to withdraw his plea or grant specific performance of the plea agreement. *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Martin,* 788 F.2d 184 (3d Cir.1986). This action must be taken "even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed." *Martin,* 788 F.2d at 187.

Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. *United States v. Read,* 778 F.2d 1437 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *United States v. Baldacchino,* 762 F.2d 170 (1st Cir.1985); *Brooks v. United States,* 708 F.2d 1280 (7th Cir.1983); *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286 (2d Cir. 1976), *cert. dismissed,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). Courts should consider not only contract principles but also ensure that the plea bargaining process is "attended by safeguards to insure the defendant [receives] what is reasonably due in the circumstances." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. *See also, United States v. Carrillo,* 709 F.2d 35 (9th Cir.1983).[2] Thus, the government cannot resort to a rigidly literal approach in the construction of language. *United States v. Crusco,* 536 F.2d 21 (3d Cir.1976); *United States v. Bowler,* 585 F.2d 851 (7th Cir.1978).

Under contract principles, we ordinarily must first determine whether the contract is ambiguous or clear. Here, neither party asserts that the language is ambiguous or that they really meant something other than what was written. We agree. The parties' real dispute is over the legal interpretation of the terms of their agreement.

■ In the plea agreement, the government promised not to "take a position relative to whether or not a custodial sentence shall be imposed" on appellant. In *United States v. Crusco,* 536 F.2d 21 (3d Cir.1976), this court examined a similar promise to not take a position at sentencing. In *Crusco,* 536 F.2d at 25, the government stated:

> As the court well knows through sitting through many months of hearings, the end result was that Cimmino sold a half kilo of almost pure heroin to the undercover agent, and that the entire facts surrounding this transaction were that it was to be a sample ... I think this shows the type of individual he is.
>
> I think it shows the importance in organized crime that he has and also shows the danger to the community that this man has by being out in the street.

As to these statements the court concluded, "We see the government's characterization as a transparent effort to influence the severity of Cimmino's sentence. Only a stubbornly literal mind would refuse to regard the government's commentary as communicating a position on sentencing." *Crusco,* 536 F.2d at 26. The court further concluded, "An unqualified promise of the prosecution not to take a position on sentencing obviously jeopardizes the government's position in the sentencing process and may require the government to remain silent when it should stand up and speak". *Id.*[3]

2. *See generally,* Kaplan, Where Promises End: Prosecutional Adherence to Sentence Recommendation Commitments in Plea Bargains, 52 U.Chi.L.Rev. 751 (1985).

3. The government argues that the language of the promise made in *Crusco* is broader than the promise in this case: "A promise to take no position on sentencing surely has broader scope than a promise to take no position relative to

Based on *Crusco*, the government's use of the "take no position" language would prohibit the comments it made in the sentencing memorandum. However, the government reserved the right to inform the sentencing judge of "the full nature and extent of John Moscahlaidis' activities with respect to the case" and "all other information, favorable or otherwise, in its possession relevant to sentence". Thus, we must determine whether this language permits the government's comments which appellant finds objectionable. We conclude that it does not.

We hold that the proper and only interpretation of this plea agreement prohibits the government from making the statements it did in the sentencing memorandum. We will first examine this phrase: "the full nature and extent of John Moscahlaidis' activities with respect to this case." Several of the phrases to which appellant objects are not covered by this language. For example, "evidence the depth of Moscahlaidis' greed and moral bankruptcy" does not describe the nature and extent of Moscahlaidis' activities; nor does "this demonic pursuit demonstrates Moscahlaidis' utter contempt for the welfare of his fellow man," or "Moscahlaidis cannot maintain even the air of inapproachable virtue with any degree of legitimacy. Moscahlaidis is not just a white-collar criminal." These three phrases are the prosecutor's opinion of Moscahlaidis' character and are not covered under the terms of this clause.

We next must determine whether these statements are covered by the phrase: "All other information, favorable or otherwise, in its possession relevant to the sentence." The government argues that it was only providing relevant information to the sentencing judge, an obligation it has indepen-

dent of the plea agreement. *See* 18 U.S.C. A. § 3661 (West Supp.1988) (previously numbered as 18 U.S.C.A. § 3577 (West 1985)). The government further argues that "evidence concerning the defendant's character is relevant to sentencing and cannot be withheld from the sentencing judge." Brief of Appellee at 20–21. That is true. However, the government, apparently dissatisfied with merely providing evidence, drew conclusions about appellant's character. Such conclusions about appellant's character amount to nothing less than "a transparent effort to influence the severity" of Moscahlaidis' sentence. *Crusco*, 536 F.2d at 26. This "transparent effort" is most apparent in the government's statement that "Moscahlaidis is not just a white-collar criminal." This is not information relevant to sentencing. When the government rendered such an opinion it took a position in contravention of its agreement and was indeed attempting to influence the court. Interpreting "information, favorable or otherwise, relevant to sentencing" as the government does would eviscerate the promise to take no position.

The government argues that since it actually did not recommend a sentence it complied with the plea agreement.[4] This court has examined the distinction between a promise not to take a position and a promise not to recommend, and has concluded, "the difference between the two terms is elementary, for the promise not to recommend, is narrow, speaking only as to the sentence to be imposed, whereas a promise to take no position speaks to no attempt at all to influence the defendant's sentence." *Miller*, 565 F.2d at 1273. Here, the government modified the promise to take no position only with the right to provide "information" relevant to the crimes and to sentencing. If the govern-

---

whether a custodial sentence should be imposed". Brief of appellee at 27. We agree that under the language in this case the government could have taken a position as to fines or probation; however, it still promised not to take a position as to whether a sentence of imprisonment should be imposed. Under *Crusco* the concept of "take no position" means no attempt to influence. *Miller*, 565 F.2d at 1273. Thus, the government is still held to its promise to

attempt no influence whether a custodial sentence should be imposed.

**4.** The government's mistaken interpretation emanates from its own sentencing memorandum wherein it states that its agreement was to "make no recommendation as to an appropriate sentence." Joint app. 101(a). This is not what it agreed to do.

ment wanted to be limited only to not recommending a sentence it should have promised not to recommend a sentence. Instead, the prosecutor promised to take no position as to whether a custodial sentence should be imposed. The government must strictly comply with the terms of the agreement it made with appellant. *Id.* at 1274. Thus, we hold that the statements made by the prosecutor which offered opinions and drew conclusions about appellant's character violated the terms of the plea agreement. We also hold that the government's comment about Moscahlaidis not being "just a white-collar criminal" was taking position relative to whether a custodial sentence be imposed and thus violated the plea agreement.[5] Therefore, as required under *Santobello*, we shall vacate appellant's sentence.

### V.

■ Appellant seeks specific enforcement of the plea agreement. He requests that we remand his case for resentencing before a different judge.[6] However, we do not decide this issue. In this circuit, the rule is to remand the case to the district court for it to determine whether to grant specific performance or allow withdrawal of the plea. *Martin*, 788 F.2d 184 (3d Cir.1986). *United States v. American Bag & Paper Corp.*, 609 F.2d 1066 (3d Cir.1979). Thus, we shall remand to the district court for it to determine whether the appropriate remedy is to require specific performance or permit the appellant to withdraw his plea.[7]

---

**5.** Given our conclusion that the prosecutor's sentencing memorandum violated the plea agreement, we need not determine whether the statements made by the prosecutor at the sentencing hearing violated the plea agreement or whether the government failed to inform the court about Moscahlaidis' cooperation as required by the plea agreement.

**6.** For a discussion of remedies see Westin & Westin, A Constitutional Law of Remedies for Broken Plea Agreements, 66 Calif.L.Rev. 471 (1978).

---

**7.** We would note, however, that if the district court decides that specific enforcement is preferable, as appellant requests, *Santobello*, 404 U.S. at 263, 92 S.Ct. at 499, instructs that resentencing should occur before a different judge. *See also, United States v. Corsentino*, 685 F.2d 48, 52 (2d Cir.1982) ("Though the need for resentencing was caused entirely by the prosecutor and is not attributable to the sentencing judge, we conclude that once the government's commitment to take no position at sentencing has been violated, compliance with the agreement is best insured by requiring resentencing before another district judge").