**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-3702, 15-3703, 15-3704, 15-3705
_____

UNITED STATES OF AMERICA,

v.

ROGER ATWOOD, I, Appellant in 15-3702, 15-3703
ROGER ATWOOD, II, Appellant in 15-3704, 15-3705

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Nos. 1-12-cr-00055-001, -002;
D.C. Nos. 1-13-cr-00260-001, -002)
District Judge: Hon. Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
October 4, 2016
_____

Before: SHWARTZ, GREENBERG, and ROTH, <u>Circuit Judges</u>.
(Filed: December 13, 2016)

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Appellants Rodger Atwood I and Rodger Atwood II[1] appeal their sentences for various drug convictions, arguing that the District Court committed error and the Government breached its plea agreements with them. Because the sentences were properly calculated and there was no breach, we will affirm.

I

The Atwoods, a father-son team, ran a large marijuana operation in Pennsylvania. In early February 2012, federal agents executed search warrants at their homes and found marijuana, drug paraphernalia, firearms, ammunition, and cash.

Atwood I was charged with state drug offenses and released on bail the same day. Days later, a federal grand jury in the Middle District of Pennsylvania returned an indictment (the "First Indictment") charging the Atwoods with conspiracy to distribute marijuana, distribution of marijuana, and possession of a firearm in connection with drug trafficking. Both Atwoods fled to Colorado. They were arrested about three months later and returned to Pennsylvania to await trial.

Several months after they were arrested, law enforcement discovered that the Atwoods had been engaging in undisclosed "side deals," attempting to purchase drugs to distribute for their own gain. In one of these deals, the Atwoods ended up negotiating with a confidential informant. This led to a second indictment in November 2013 for conspiracy to distribute and possess with intent to distribute cocaine (the "Second Indictment").

---

[1] We refer to the father as Atwood I and the son as Atwood II.

In October 2013, the Atwoods pleaded guilty to a superseding information stemming from the marijuana charges in the First Indictment. The plea agreements resolving the First Indictment contained language concerning sentencing reductions for acceptance of responsibility under U.S.S.G. § 3E1.1, and departures under U.S.S.G. § 5K1.1. In April 2015, the Atwoods pleaded guilty, pursuant to other plea agreements, to a superseding information related to the cocaine charges in the Second Indictment.

At their joint sentencing, the Atwoods challenged a number of recommendations contained in the Pre-Sentence Report ("PSR"). Relevant to this appeal, Atwood I challenged the enhancement for obstruction of justice under § 3C1.1, and both Atwoods asserted that they were entitled to a reduction for acceptance of responsibility under § 3E1.1. In addition, both Atwoods complained about the § 5K1.1 departure the Government recommended.

The District Court overruled Atwood I's objection to the obstruction enhancement, finding that the enhancement was warranted because he had fled immediately after his arrest on state charges and failed to appear for a judicial proceeding in the related state case, which delayed the federal prosecution.

The District Court also denied the Atwoods' request for a reduction for acceptance of responsibility.[2] It noted that the Atwoods continued to engage in extensive criminal activity after first being indicted, and that they denied significant aspects of the conduct

_____

[2] While the Government agreed that the Atwoods had accepted responsibility with regard to the Second Indictment, it argued that the Atwoods' flight and continued criminal conduct following the First Indictment demonstrated that they had not accepted responsibility for their actions related to that indictment.

3

that formed the basis for the conviction under the Second Indictment. The District Court also observed that, because Atwood I had obstructed justice, he was not entitled to an exception from the rule that a defendant who obstructs justice is typically denied a § 3E1.1 reduction.

The District Court did, however, grant the Government's § 5K1.1 departure motion. The District Court concluded that a three-level reduction, rather than the one-level departure the Government recommended, balanced the Atwoods' efforts against their continued criminal activity.

After noting that Atwood I was a career offender under U.S.S.G. § 4B1.1, the District Court sentenced Atwood I to 151 months' imprisonment on each information, to be served concurrently, and sentenced Atwood II to 200 months' imprisonment—100 months on each information, to be served consecutively. The Atwoods appeal.

II[3]

The Atwoods argue that the District Court erred by failing to grant them reductions for acceptance of responsibility, and the Government breached the plea agreements by failing to advocate for the acceptance of responsibility reduction and not requesting a greater departure under § 5K1.1. We will address each argument in turn.

A

The Atwoods first argue that the District Court erred by failing to grant a sentence reduction for acceptance of responsibility pursuant to § 3E1.1.[4] Under § 3E1.1, a

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

defendant who adequately accepts responsibility for his criminal conduct is entitled to a reduction in his offense level.  See U.S.S.G. § 3E1.1.  "Because the sentencing judge 'is in a unique position to evaluate a defendant's acceptance of responsibility,' we give great deference on review to a sentencing judge's decision not to apply the . . . reduction for acceptance of responsibility to a particular defendant."  United States v. Barr, 963 F.2d 641, 657 (3d Cir. 1992) (quoting U.S.S.G. § 3E1.1 cmt. n. 5).

The District Court relied on several grounds for denying the reduction for acceptance of responsibility, and each is independently sufficient.  First, the District Court properly considered the Atwoods' conduct prior to their guilty pleas in October 2013.  We have not limited consideration of relevant conduct for purposes of assessing acceptance of responsibility to a certain time period or category of conduct.  Rather, any relevant conduct that occurs from the time the defendant is on notice of the Government's interest in his criminal activities may be considered in determining whether he has truly manifested an acceptance of responsibility.  United States v. Ceccarani, 98 F.3d 126, 128 (3d Cir. 1996) (finding a denial of acceptance of responsibility proper where conduct took place pre-plea but after the defendant was indicted).  Here, the Government notified the Atwoods of its interest in their conduct at the time the search warrants were executed, and therefore their behavior thereafter may be considered.

---

[4] A district court's interpretation of the sentencing guidelines is subject to de novo review, but a factual determination as to whether a defendant is entitled to a reduction for acceptance of responsibility, for example, is reviewed for clear error.  United States v. Ceccarani, 98 F.3d 126, 129 (3d Cir. 1996).  A defendant has the burden to demonstrate by a preponderance of the evidence that he is entitled to the reduction for acceptance of responsibility.  United States v. Harris, 751 F.3d 123, 126 (3d Cir. 2014) (citing United States v. Boone, 279 F.3d 163, 193 (3d Cir. 2002)).

Such behavior includes Atwood I's flight, and both Atwoods' continued criminal conduct from the time they were first indicted in February 2012 until after their first guilty plea in October 2013. The commentary to § 3E1.1 states that a court may take into account whether a defendant voluntarily withdraws from criminal conduct or associations. See U.S.S.G. § 3E1.1 cmt. n.1. Given this rule, we cannot say the District Court committed clear error in concluding that the Atwoods' entitlement to a reduction for acceptance of responsibility was "outweighed by" their failure to withdraw from "continued criminal activity." Ceccarani, 98 F.3d at 129-30 (citation omitted).

Nor did the District Court clearly err in denying the Atwoods the acceptance of responsibility reduction based on their denial of certain relevant conduct underlying their convictions. Their failure to acknowledge such conduct is sufficient to deny them a reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1 cmt. n.1(A) (noting that among factors relevant to the acceptance of responsibility determination is "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable"). Thus, we will affirm the District Court's denial of acceptance of responsibility.

B

The Atwoods next assert that the Government breached provisions of the plea agreements arising out of the First Indictment. The Atwoods contend that the Government breached terms regarding acceptance of responsibility and downward departures by failing to advocate for a reduction for acceptance of responsibility and

6

recommending only a one-level downward departure under § 5K1.1.[5] These arguments lack merit.

In determining whether a plea agreement has been breached, we apply contract principles and look at whether the Government's conduct was inconsistent with what was reasonably understood by the defendant when entering the guilty plea.[6] United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998). Thus, we must examine whether the claim of breach is one where "the defendant's expectations as to his sentence are predicated on promises [made] by the Government or statements from the court," or if it is based on "disappointed but unfounded expectations." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992) (citation omitted).

1

We first address the Atwoods' argument that the Government breached the agreements by only recommending a reduction for acceptance of responsibility on the Second Indictment, and declining to do so for the First Indictment. They assert that the Government was aware of the conduct underlying the Second Indictment when it entered the first plea agreements, and despite its promise to support the reduction, it never intended to do so and thus acted in bad faith.

---

[5] "Whether the government's conduct violates the terms of the plea agreement is a question of law" subject to plenary review. United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989).

[6] We require the Government to generally "adhere strictly to the bargain it strikes with defendants" in entering a plea agreement. United States v. Hodge, 412 F.3d 479, 485 (3d Cir. 2005) (citation omitted); Moscahlaidis, 868 F.2d at 1361.

The agreements' acceptance of responsibility provisions provide for the Government's support for an acceptance of responsibility reduction if the Atwoods adequately demonstrate that they have, in fact, accepted responsibility. The clause has a condition precedent, namely that the defendant show he has accepted responsibility. If the condition is not satisfied, the agreements do not require the Government to support a reduction. Here, the Atwoods did not fulfill the condition precedent as demonstrated by, among other things, their continual flouting of the law. Nolan-Cooper, 155 F.3d at 236 (contract principles, rather than a "rigidly literal" approach is required in interpreting plea agreements). Because the Atwoods engaged in criminal conduct after entering their guilty pleas that is inconsistent with acceptance of responsibility, they failed to satisfy the condition needed to obtain support for a § 3E1.1 reduction.[7] The Government therefore neither acted in bad faith in entering the agreements nor breached them by opposing the reduction.

2

The Atwoods' argument that the Government breached the plea agreements arising out of the First Indictment by only recommending a one-level departure under § 5K1.1 also fails. The Atwoods essentially argue that the Government's decision to advocate only a one-level departure constitutes bad faith.

---

[7] As explained above, the District Court had an entirely separate and sufficient basis for declining to grant an acceptance of responsibility reduction outside of the Government's alleged "bad faith" actions, namely the Atwoods' criminal conduct prior to their plea, and the ongoing denial of significant relevant conduct. Thus, even if the Government supported an acceptance reduction, its advocacy would not likely have changed the outcome.

The agreements here mandate that the Government will seek a departure if the Government believed the Atwoods provided substantial assistance and fully comply with their plea agreements. Additionally, the Government explicitly retained the discretion concerning the amount of departure it would seek. Thus, the agreements contained no language giving the Atwoods a basis to expect a specific departure recommendation from the Government. See United States v. Medford, 194 F.3d 419, 423 (3d Cir. 1999) ("[W]e find no basis for the defendants' contention that the government acted in bad faith by failing to make a more concerted 5K1.1 downward departure motion at the time of sentencing." (internal citation omitted)); see also United States v. Erwin, 765 F.3d 219, 227 (3d Cir. 2014) (finding no due process violation "[b]ecause the record is devoid of any indication that the Government promised it would specifically request a five-level downward departure"), cert. denied, 136 S. Ct. 400 (2015). The Government here complied with its obligations under the agreements by moving for a downward departure, and we cannot say that its one-level recommendation is outside the "range of expectations reasonably understood" by the Atwoods when they entered their plea. United States v. Larkin, 629 F.3d 177, 186, 192 (3d Cir. 2010) (using contractual approach to analyze plea language and finding that the Government did not breach the plea by arguing certain enhancements to be applicable). Therefore, the Government did not breach the agreements.

Furthermore, there is no basis to believe the Government acted in bad faith in making its one-level recommendation to the District Court.[8]  Section 5K1.1 requires that the District Court consider several relevant factors in exercising its discretion to depart downward, including the truthfulness and completeness of the information provided, and the nature and extent of assistance given.  U.S.S.G. § 5K1.1(a).  Thus, the District Court was permitted to temper its § 5K1.1 analysis with a recognition of the Atwoods' extensive criminal behavior.  United States v. Torres, 251 F.3d 138, 148 (3d Cir. 2001).  It therefore follows that the Government's reliance on those same factors in fashioning its recommendation would not constitute bad faith.

Because the Government fully complied with its obligations pursuant to the plea agreements and did not act in bad faith, there is no basis to find a breach of the plea agreements or disturb the District Court's sentences.

### III

For the foregoing reasons, we will affirm the sentences imposed by the District Court.[9]

---

[8] Because the Government abided by the terms of the plea agreements, a breach will generally be found only in cases of bad faith or an unconstitutional motive.  See United States v. Huang, 178 F.3d 184, 189 (3d Cir. 1999) (because the Government had discretion to decline to make a departure motion, its decision "is reviewable only for bad faith or an unconstitutional motive").  Neither are present here.

[9] Atwood I also challenges the District Court's application of a sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  However, we need not address this argument, because Atwood I is a career offender under U.S.S.G. § 4B1.1, and such an enhancement would have no impact on his sentence and any error associated with this issue would be harmless.